## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH BIDWELL,** | : | **Civil No.  1:21-CV-1387** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Social Security disability claims are evaluated pursuant to a familiar five-step test. An Administrative Law Judge (ALJ) only reaches the fifth, and final, step in this analysis after it has been determined that a claimant suffers from serious impairments which are so grave that the claimant can no longer perform his or her past relevant work. At this final stage in disability claims analysis the burden of proof shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and residual functional capacity (RFC). 20 C.F.R. §§404.1512(f), 416.912(f).

The instant case calls upon us to consider the adequacy of this Step 5 analysis in a case in which the ALJ relied upon a Vocational Expert's testimony to conclude

that the claimant, Elizabeth Bidwell, could perform jobs which existed in significant numbers in the national economy. However, that Vocational Expert testimony reveals that the expert relied upon at least one job description which, in our view, plainly did not satisfy the Commissioner's burden of proof in this regard since one of the jobs identified by the expert, parimutuel ticket checker, involved a meager 1,090 jobs nationally and entailed only two jobs regionally. (Tr. 974, 978). Mindful that the Commissioner must show that a significant number of jobs exist in the national economy that the claimant could perform, we find that this evidence is insufficient to carry the Commissioner's burden of proof on this issue. Therefore, this case will be remanded for further consideration by the Commissioner.

## II.   **Statement of Facts and of the Case**

### A. **Procedural History**

This case has a painfully protracted procedural history. On September 25, 2012, Elizabeth Bidwell applied for disability benefits, alleging an onset of disability beginning in April 2008 after she suffered severe electrical burns in an accident. (Tr. 40). Bidwell's disability claim was initially denied by an ALJ on December 4, 2014. (Id.) However, some fourteen months later, in February of 2016, the Social Security Appeals Council vacated this decision and remanded Bidwell's case for further consideration by the ALJ. (Id.)

A second disability hearing was then conducted on August 22, 2016. (Tr. 58-107). Eight days later, on August 30, 2016, the ALJ entered a decision denying Bidwell's application for benefits. (Tr. 37-57).  Bidwell appealed this decision and on December 11, 2017, this court remanded Bidwell's case for further consideration by the Commissioner. (Tr. 1062-92). Pursuant to this court order, on April 11, 2018, the Social Security Appeals Council vacated the ALJ's decision and remanded this case for further evaluation by an ALJ. (Tr. 1095).

Following yet another administrative hearing, (Tr. 987-1026), on June 20, 2019, the ALJ entered a decision denying Bidwell's disability claim. (Tr. 1097-1121). This ALJ decision, in turn, was vacated by the Appeals Council on December 11, 2019, (Tr. 1122-26), setting the stage for the latest ALJ hearing decision, the proceedings that are the subject of the instant appeal.

## B. Bidwell's Latest Hearing and ALJ Decision

On May 12, 2020, a fourth administrative hearing was conducted in Bidwell's case. (Tr. 924-83). This hearing confirmed that Bidwell suffered significant and on-going impairments as a result of the burn injuries she had suffered in 2008. The severity of these injuries was aptly captured in the highly restrictive residual functional capacity (RFC) assessment that the ALJ fashioned for Bidwell following this hearing. That RFC strictly limited Bidwell's employability finding that she:

> [H]ad the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). More specifically,

3

> the claimant can lift and/or carry up to 10 pounds maximum, push and/or pull up to 10 pounds frequently, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to two hours in an eight-hour workday, but she can only stand for up to fifteen minutes at a time. She can occasionally crawl, crouch, kneel, stoop, balance, and climb stairs and ramps, but can never climb ladders, ropes, and scaffolds. Also, she can occasionally operate foot controls with the left leg/foot. The claimant will be limited to jobs that can be performed while using a handheld assistive device for walking on uneven terrain or prolonged ambulation. She must avoid concentrated exposure to unprotected heights and hazardous machinery. Psychiatrically, the claimant requires a low stress job that is defined as having only occasional decision making, changes in the work setting, and judgment while performing the job. Lastly, the claimant can tolerate no more than occasional interaction with coworkers, supervisors, and the public.

(Tr. 898).

Given these extreme limitations imposed upon Bidwell by her impairments, the ALJ concluded that she could no longer perform her past relevant work. (Tr. 906). This ALJ finding placed the burden squarely upon the Commissioner to show that a significant number of jobs exist in the national economy that Bidwell could perform that were consistent with the claimant's age, education, work experience, and RFC.

The Commissioner endeavored to carry this burden of proof by presenting the testimony of a vocational expert, (Tr. 967-81), but that testimony provided an exceedingly thin and equivocal reed upon which to deny Bidwell's benefits claim. At the outset, the Vocational Expert rejected one job category previously considered by the ALJ, the job of an addresser, stating that: "I cannot in all good conscience

give that job now because of the—it's the question of whether it truly exists in that particular form . . . ." (Tr. 976).

Having discounted this job category, the Vocational Expert then opined that Bidwell might be able to perform the task of a parimutuel ticket checker, but the expert's testimony made it clear that such work did not exist in significant numbers in either the regional or national economy. Indeed, in her testimony the expert conceded that this position involved only 1,090 jobs nationally and entailed no more than two jobs regionally. (Tr. 974, 978).

The final job category identified by the expert was that of a microfilm document preparer. (Tr. 974). However, the expert readily conceded that Bidwell's impairments significantly eroded her ability to perform this job, and estimated in a summary fashion that the number of available jobs in this category would have to be reduced by at least 50%, to no more than 9,522 jobs nationally. (Tr. 975). The expert provided no evaluation regarding the regional availability of these document preparer jobs in her testimony. (Id.) Thus, stripped to its essentials, the Vocational Expert's testimony seemed to disclose a single line of work—microfilm document preparer—which existed in number totaling less than 10,000 jobs nationally, that Bidwell could perform.

Notwithstanding the weakness of this expert testimony, in making the decision to deny Bidwell's disability application, the ALJ uncritically accepted this

testimony in finding that the Commissioner had carried its burden of proof on this

issue, stating that:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as a pari-mutuel ticket checker (DOT 219.587-010), which has 1,090 jobs nationally and as a document preparer, microfilm (DOT 249.587-018), which has 9,522 jobs nationally. Both jobs require sedentary physical exertion and are unskilled with an SVP of two.

(Tr. 907). Based upon these findings the ALJ denied the claim of this severely

impaired individual.

This appeal followed. (Doc. 1). On appeal, Bidwell argues, *inter alia*, that the

ALJ erred in making this finding that there were significant jobs in the national

economy which she could perform. On the unusual facts of this case, where the

Vocational Expert included in her analysis one job title that entailed only two

positions regionally and another job title which she conceded would yield less than

10,000 jobs nationally, we agree that more is needed to carry the Commissioner's

Step 5 burden of proof. Therefore, we will remand this case for further consideration

by the Commissioner.

6

### III. __Discussion__

### A.    __Substantial Evidence Review – the Role of this Court__

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2014)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use

> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is

engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that a  significant number of jobs exist in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

At step five of the sequential evaluation process, the adjudicator considers his or her assessment of the claimant's RFC, the claimant's age, the claimant's education, and the claimant's other work experience to determine whether the claimant can make an adjustment to work other than the claimant's past relevant work. 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v). If the ALJ finds that the claimant can adjust to other work, the claimant will be found not disabled. <u>Id.</u> However, a claimant will not be denied disability benefits on the basis of the existence of isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the claimant lives. 20 C.F.R. §§404.1566(b), 416.966(b). Therefore, when making findings at step five, the adjudicator must also consider whether the other work that the claimant can engage in exists in significant numbers in the region where the claimant lives or in several other regions of the country. <u>Id.</u> On this score, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical and mental abilities and vocational qualifications." 20 C.F.R. §§404.1566(a), 416.966(a).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. Standard of Review: Jobs Which Exist in Significant Numbers in the National Economy.

A central issue in this appeal is the question of whether the Commissioner has carried the burden of proving at Step 5 of this sequential analysis that jobs existed in significant numbers in the national economy which Bidwell could perform. In this regard, the controlling regulations define the Commissioner's burden of proof in the following terms:

> (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—
>
> (1) Work exists in the immediate area in which you live;
> (2) A specific job vacancy exists for you; or
> (3) You would be hired if you applied for work.

(b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

(c) Inability to obtain work. We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—

(1) Your inability to get work;
(2) Lack of work in your local area;
(3) The hiring practices of employers;
(4) Technological changes in the industry in which you have worked;
(5) Cyclical economic conditions;
(6) No job openings for you;
(7) You would not actually be hired to do work you could otherwise do; or
(8) You do not wish to do a particular type of work.

20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.

There are several critical components to this definition of the term "work which exists in the national economy." At the outset this determination involves a somewhat hypothetical exercise which is rooted in empirical economic data. This determination has a hypothetical aspect to it since it is clear that the ability of the claimant to *actually* obtain employment in specific fields is largely irrelevant. Thus, the regulations make it clear that the claimant's inability to get work; the lack of

14

work in the local area; the hiring practices of employers; technological changes in the industry; cyclical economic conditions; the lack of actual job openings; and the fact that the claimant would not actually be hired to do work she could otherwise do are all irrelevant to this determination of whether work exists in the national economy that the claimant could perform.

Yet while this regulatory definition has this hypothetical component to it, the analysis of whether jobs exist in significant numbers in the national economy is firmly grounded upon objective economic data. Thus:

> Work [only] exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. § 416.966(b); 20 C.F.R. § 404.1566(b). In reaching a conclusion regarding the existence of significant jobs in the national economy, the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 416.966(d); 20 C.F.R. § 404.1566(d). In addition, the Commissioner may use the services of a vocational expert or other specialist to aid in this determination. 20 C.F.R. § 416.966(e); 20 C.F.R. § 404.1566(e).

It is also clear that, notwithstanding the fact that the inquiry is captioned as a determination of "work which exists in the national economy," there is a regional component to this analysis. Indeed, the regulations specifically provide that the Commissioner "consider[s] that work exists in the national economy when it exists in significant numbers *either in the region where you live or in several other regions of the country.*" 20 C.F.R. § 416.966(a); 20 C.F.R. § 404.1566(a). By incorporating some regional analysis into this nationwide evaluation, the regulations avoid two evils. First, this approach ensures that disability cannot turn on where you live. In addition, the regulations provide that disability should not be denied because the VE testifies as to the existence of uncommon jobs not generally available across the country. Ellis v. Kijakazi, 553 F. Supp. 3d 628, 632 (E.D. Wis. 2021). By including both national and regional aspects in this regulatory definition of "work which exists in the national economy" the regulations, in effect, adopt a pragmatic standard and "the test is whether [t]he [claimant] is so disabled that there are no jobs in reasonable proximity to where she lives that she is physically able to do." Barrett v. Barnhart, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004).

Notably the regulations do not set any precise metrics for assessing what may be a significant number of jobs and generally courts have not articulated some definitive arithmetic boundary defining a "significant number" of jobs. See, e.g., Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) ("We are not blind, however, to

the difficult task of enumerating what constitutes a 'significant number' . . . . The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."); <u>Trimar v. Sullivan</u>, 966 F.2d 1326, 1330 (10th Cir. 1993) ("This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and reject the opportunity to do so here.").

However, case law examining the regional and national aspects of this definition provide us some general guidance in evaluating what may constitute a significant number of jobs. For example, focusing upon the regional component of this definition, the Third Circuit found that a VE's testimony that there were approximately 200 jobs within the claimant's capabilities in his region was a "clear indication that there exists in the national economy other substantial gainful work which [the plaintiff] can perform." <u>Craigie v. Bowen</u>, 835 F.2d 56, 58 (3d Cir. 1987); <u>see also</u> <u>Ahmad v. Comm'r of Soc. Sec.</u>, 531 F.App'x 275, 278 (3d Cir. 2013) ("In light of our determination in <u>Craigie v. Bowen</u>, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); <u>Black v. Berryhill</u>, No. 3:16-CV-1768, 2018 WL 4189661, at *12 (M.D. Pa. Apr. 13, 2018), <u>report and</u>

recommendation adopted, No. 3:16-CV-1768, 2018 WL 4184303 (M.D. Pa. Aug. 31, 2018) (12,000 jobs); Onley v. Colvin, No. 1:13-CV-2833, 2015 WL 1513909, at *10 (M.D. Pa. Mar. 31, 2015) (700 jobs). Likewise, the Third Circuit has also provided us with benchmarks regarding what constitutes a substantial number of jobs in the national economy, finding that, "the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers." Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013). Conversely, when the number of jobs identified in the national economy totals less than 10,000 positions, or the number of regional jobs falls below 100, courts have frequently found that the Commissioner's burden of proving at Step 5 that jobs existed in significant numbers in the national economy has not been met. See e.g., Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012) (135 jobs in the regional economy held not significant); Ellis v. Kijakazi, 553 F. Supp. 3d 628, 635 (E.D. Wis. 2021) (remanding where only 14,500 jobs identified in the national economy); Ochoa v. Colvin, No. 1:12–CV–00604–SKO, 2013 WL 4816130, at *8 (E.D.Cal. Sept. 6, 2013) (80 jobs in Sacramento were not significant); Valencia v. Astrue, No. C 11–06223 LB, 2013 U.S. Dist. LEXIS 41758, 2013 WL 1209353, at *18 (N.D.Cal. Mar. 25, 2013) (114 regional jobs in San Francisco Bay area and 14,082 national jobs were not significant); Lenon v. Apfel, 191 F. Supp. 2d 968, 979 (W.D. Tenn. 2001) (117 jobs in the regional economy held not significant); Jimenez

v. Shalala, 879 F. Supp. 1069, 1076 (D. Colo. 1995) (200–250 jobs in regional economy held not significant).

### D. **A Remand is Required Here.**

Judged by these benchmarks on the current record, we find that the Commissioner has not carried the burden of proving that a significant number of jobs existed in the national economy which Bidwell could perform. Accordingly, this case will be remanded for further consideration by the Commissioner.

At the outset we note that the Vocational Expert's testimony provided scant support for the proposition that Bidwell could perform work that existed to a significant degree in the national economy. Indeed, in her testimony, the Vocational Expert rejected one job category previously considered by the ALJ in prior decisions denying Bidwell's application for benefits, the job of an addresser, stating that: "I cannot in all good conscience give that job now because of the—it's the question of whether it truly exists in that particular form . . .." (Tr. 976).

Having discounted this job category, the Vocational Expert then opined that Bidwell might be able to perform the task of a parimutuel ticket checker, but we believe that the Vocational Expert's testimony actually illustrated that such work did not exist in significant numbers in either the regional or national economy. Indeed, in her testimony the expert conceded that this position involved only 1,090 jobs nationally and entailed no more than two jobs regionally. (Tr. 974, 978).

This testimony substantially undermined any reliance upon this job title to support the ALJ's Step 5 determination that there were a significant number of jobs in the national economy which Bidwell could perform. Simply put, while the availability of 200 jobs regionally may arguably support a finding of significant available work, Craigie v. Bowen, 835 F.2d at 58, the existence of only two jobs regionally plainly cannot serve as a basis for a finding that this job category existed in significant numbers in the regional economy. Moreover, the testimony that there were only 1,090 such positions in the entire United States made this job title an inappropriate guidepost for a Step 5 conclusion that Bidwell could perform a significant number of jobs in the national economy.

The final job category identified by the expert was that of a microfilm document preparer. (Tr. 974). However, the expert readily conceded that Bidwell's impairments significantly eroded her ability to perform this job, and estimated in a summary fashion that the number of available jobs in this category would have to be reduced by at least 50%, to no more than 9,522 jobs nationally. (Tr. 975). The expert provided no explanation for how she had reached this substantial rate of job erosion due to Bidwell's severe impairments. Nor did the Vocational Expert describe the regional availability of these document preparer jobs in her testimony. (Id.) Thus, stripped to its essentials, the Vocational Expert's testimony identified a single line

of work—microfilm document preparer—which existed in number totaling less than 10,000 jobs nationally, that Bidwell could perform.

This number falls well below the 20,000-job national threshold deemed sufficient in Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) and falls squarely within the range of jobs nationwide that other courts have often found to be inadequate to carry the Commissioner's burden of proof on this issue. In our view, without some further context or content, this otherwise unadorned testimony is simply too thin a reed to support the finding that Bidwell could perform work that existed in significant numbers in the national economy. Accordingly, we conclude that a remand is necessary here to further address the Commissioner's Step 5 burden of proving the existence of a significant number of jobs in the national economy which Bidwell could perform.

Yet, while we reach this conclusion, we note that nothing in this opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider

the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); <u>see also</u> <u>Lawrence v. Colvin</u>, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## IV.   **Conclusion**

For the foregoing reasons, this case will be REMANDED to the Commissioner for further administrative proceedings consistent with this Memorandum Opinion.

An appropriate order follows.

<u>/s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November 2, 2023